The next case today is Merrill Lynch, Pierce, Fenner, and Smith, Inc. et al. v. Catherine Flanders-Borden. Appeal number 20-1942. Attorney Adams, please introduce yourself on the record and proceed with your argument. Good afternoon. May it please the court, this is Attorney Adams for the appellant, Ms. Flanders-Borden. Proceed. If I could reserve two minutes for rebuttal? Yes. Okay. Your Honors, this is a de novo review of a summary judgment decision. In this case, I would be relying on the principal cases from this court, the first being as cited in my brief. Mr. Adams, before you get there, an objection has been made as to your notice of appeal and what issues actually are encompassed within that notice, and that has to be answered logically before we get into the question of summary judgment. So what do you have to say? Well, I believe that the objection is to the order of dismissal for the Merrill Lynch discharge from the case. I believe that's the objection on the point of the summary judgment issue. And do you concede, therefore, that Merrill Lynch is no longer part of the case and is not the subject of this appeal? I would believe, yes, the discharge would be a moot point at this time. The money has been paid into court. It has been distributed. I believe it does not ultimately discharge Merrill Lynch from some issues that were not resolved by the discharge of the interpleader action. There are two different issues. One is the effect of the discharge. The other is the notice of appeal. Right. So I would concede that I would not be at this point making an issue of the discharge of Merrill Lynch of the interpleader action. But you disagree that the notice of appeal deprives us of jurisdiction of whatever residual arguments you have. Well, I believe the issue would relate to whether or not the estate should have been a joined party. I believe that issue is not discharged. OK, so now get to the summary judgment, please. Again, so this is a DeNova review of a summary judgment decision that I would rely on the principal cases from this court of Stepanishin versus Merchants Dispatch, which is basically saying that the ultimate burden rests with the summary judgment moving party. So in this case, it's really immaterial that Miss Borden was unable to effectively oppose the summary judgment motion. The issue is going to be, was the summary judgment motion sufficient to be sustained? Five minutes remaining. The. The issue, second case that I would rely on here is one Blanchard v. Peerless, which states that when the moving party has. Evidence that internally inconsistent, it creates the question of fact that must be resolved by a jury. And I believe it's all internal conflicts and evidence resolved favorably to the non moving party. And this is a situation where I'm really relying on. There are just two relevant affidavits in this case that support summary judgment. The first being. William Sherry, who was the decedent's health care proxy. He was also a fiduciary and it is Mr. Sherry who introduces the evidence that the decedent suffered a hospitalization. And Mr. Sherry had him admitted to a psychiatric hospital. His own affidavit, Mr. Sherry's affidavit describes that he became concerned that Roy was acting odd. He did not seem connected to reality. So this is a psychiatric hospitalization for a mental disability. Just prior to the execution of the T.O.D., the transfer on death agreement. That is the subject here. When you say. Yes. Judge Kayada again. Yes, you are months, right? Yes. So. So it's the moving party that introduces this issue of the mental state of the decedent when he signed or executed this T.O.D. agreement. Mr. Sherry introduces the fact that he did suffer a mental disability at some point. Mr. Sherry actually had him hospitalized. There is no evidence introduced of his cure or a resolution of that condition. And. There's no. That is evidence that was introduced by the moving party. I'm sorry. Mr. Sherry's affidavit also says that he was released. His mental abilities increased back to normal. And that at the time he signed the T.O.D., there was no reason to doubt his competency. Well, that would be for Mr. Sherry, at least there are two issues there. One, he was not there at the time the T.O.D. was. No, no, no. He doesn't say that. He says he was around him during that four month period and was around him at the time just before he signed. And it is true in the cases of both New York and Massachusetts that his testimony on that point would be considered opinion evidence, which the jury should be considering as to making the jury decision as to whether a competent is not Mr. Sherry, who has either the expertise or he can describe what he saw regarding Mr. The decedent's behavior. But the determination of his capacity is to be made by the jury, not by Mr. Sherry. He doesn't have that ability. What he is expressing is an opinion. Now, even in the case where we're referring to the individual, the only individual who was there when the document was executed, which is his attorney, Miss Thresher, her evidence, again, is opinion evidence as to what she saw and described. And if you go to dig down to the actual affidavit of Miss Thresher, she describes that she saw him on the date she gave him the document. She saw him sign it. That she doesn't recall their discussions regarding that. So, again, that would be evidence that would be presented to the jury from which the jury would decide, in light of all of the other evidence, whether the jury could conclude that he was competent or not. And the jury might conclude that he was competent based on the evidence that's presented. But the jury could also conclude that he wasn't. Well, let me ask you about that last point. Let's assume that the jury's told four months before he was hospitalized for an acute event, he was then discharged, that at the time of discharge, the doctor was of the opinion that he had a neurocognitive disorder, that it was irreversible, that it was of moderate extent, and it was of long-term duration. And that's the only evidence in the record of lack of competence. And then the jury hears from these other witnesses about his actual behavior, who observed him during the four months. How is a jury, on its own, to then decide that a neurocognitive disorder of moderate extent renders him incompetent? Well, there's a difference between contractual incompetency and testamentary incompetency. The ability under contractual incapacity, it's the ability to understand the agreement, the transaction, as opposed to generally what your property is and who might be the natural beneficiaries of that property. There's a different standard, a higher standard for contractual capacity. And even Ms. Brescher's affidavit— Time has expired. Go ahead and finish your sentence. Ms. Brescher states that she received the document, she put names in for him, but there's no indication she ever discussed that actual transaction document with the decedent. So the presenting evidence that he actually understood this agreement would not be present. Okay, Mr. Adams, you've reserved some time. Thank you. Thank you. Thank you, Mr. Adams. Please mute your audio and video at this time. Attorney Schultz, please introduce yourself on the record to begin. May it please the court, I am Hillary Schultz, and I am appearing for appellees William Sherry, David Flanders, Karen Beattie, and Brett Peterson. I would like to start this afternoon. First, I'd like to reserve one minute of my time for— No, no, no, no. Oh, that's fine. You're the wrong party to try to reserve time. Get to your argument, please. Fair enough, Your Honor. I would like to start by where Mr. Adams commented that the ultimate burden in summary judgment rests on the moving party. In general, that's true. But here, where you have the substantive law of the Commonwealth of Massachusetts and the Sparrow case putting the burden of proof on the other party, and there is an absolute failure of that burden of proof by Ms. Flanders' board, then the point that Mr. Adams was making is not accurate. I think that it would be helpful to the court for me to briefly rephrase what it is that Sparrow held. First, that a person with a mental condition or mental illness can make an enforceable contract so long as that person— And alternatively, it would not be enforced if, despite his cognitive ability and his intellect, his mental illness prevented him from making that understanding or— Ms. Schultz, regardless of who has the burden, you've got an argument that, in light of the evidence which you submitted, no reasonable jury could conclude that he lacked the capacity to sign the TOD. Do you want to walk us through that argument, please? Yes, I'd be happy to walk you through what the evidence was before the court on the summary judgment record, all of which was unrebutted. You have the affidavits from Attorneys Bresher and Glidden that the TOD distributions that Roy directed were consistent with the wishes that he expressed to them, that he wanted to provide something for his brother and his three friends. He understood that he was not able to come to a decision about what should be in his estate plan, but he wanted to do something, and he knew about this vehicle of the TOD. That was the choice that he made. He knew that was a contract with Merrill Lynch. I've got this stock with you, Merrill Lynch. When I die, it should go this way. The second point is that Attorneys Bresher and Glidden had no interest in the TOD, and they had no stake in it, so their information, the evidence they submitted, is neutral. That is an important point for considering the Sparrow standards. You have evidence that Roy met with both Attorneys Bresher and Glidden in February of 2016, which is three months after he was discharged from the Haywood Hospital. At that time, he discussed with them the TOD. You have evidence that Roy himself obtained the TOD form, that he personally gathered the information about the beneficiaries that was needed to complete the TOD form, and then he gave that information to his attorney prior to the March 22nd meeting so she could fill out the form. We turn to the March 22nd meeting, and at that time, as Mr. Roddams points out, she handed him the TOD. She observed that he was reading it. She asked him if he had any questions. He said no. This was not a new document to him. They had discussed this several times previously, and he knew what it was, and so she watched him sign it, and she notarized his signature, and she was in a position, having met him before. This is not somebody that was new to her. She had worked with him for three years. She was in a position to say she had no doubt that Roy understood what he was doing when he signed the TOD on March 22nd, four months after he left the Haywood Hospital, that he knew what the TOD was designed to do and intended to accomplish, and that he knew the people that he was leaving this specific stock to. Let me ask you the flip side of the question I asked your colleague. Putting all that on one side of the scale that you've just reviewed as evidence that the jury could find he was competent, what do you say about the notice of determination of patient incapacity where the doctor not only, when he was admitted to Haywood Hospital, diagnosed a neurocognitive disorder but also deemed it irreversible and moderate? So the question is, with that information alone put in the scales, did that create a jury issue that they could find that he was, four months later, not sufficiently competent to execute the document? Your Honor, if that document, that single page, had been properly authenticated, had actually been submitted to the district court, and could satisfy either one of the hearsay exceptions, then that perhaps would have created a jury issue, but none of those things is true. Time has expired. Answer the question. And that leads me to the issues about the Haywood Hospital records in the appendix generally. And on that issue, I will largely rest on the arguments in my brief at pages 29 to 38, but I wanted to point out just a couple of things. One, in Appellant's initial brief, she never acknowledged that she was trying to sneak these documents in. Ms. Schultz, this is all in your brief. You are now over time. Thank you. Thank you, Attorney Schultz. At this time, you can mute your audio and video. And Attorney Heston, if you could introduce yourself on the record to begin. May it please the Court, Nellie Heston, on behalf of Appellee Merrill Lynch. Merrill Lynch is a disinterested party in this interpleader. Nonetheless, the appeal implicates two issues involving Merrill Lynch. The non-joinder of Roy Flanders' estate as a separate party and Merrill Lynch's discharge. Understanding that Mr. Adams has answered the Court that Ms. Flanders Borden is not appealing the discharge order, I will not include argument on that unless the Court has specific questions for me. But as to the non-joinder of the estate, that challenge fails for both procedural and substantive reasons. Beginning with procedure here, there's a waiver issue for Ms. Flanders Borden. It's well settled, of course, that a party cannot raise an argument for the first time on appeal. And the issue of joinder of the estate was never raised before the District Court. Ms. Flanders herself, of course, could have sought to have the estate added in the District Court proceedings. And as personal representative of the estate, she was best situated to do so. And she did not seek to have it added as a party and never raised the issue before the Court. So you are arguing there's a double waiver. Not only did she not raise the issue, but she could have taken action on her own and she did not. Both of those are different waivers. Yes, Your Honor. And I think the second of which goes to the merits issue with the non-joinder argument. And that's that Ms. Flanders Borden hasn't established that the estate was a necessary party under Rule 19A. So, first of all, the Court was able to afford complete relief among the existing parties. The TOD beneficiaries were the only parties with interests under the TOD agreement, which divides the entire account. And then separately, the estate has not, in fact, claimed an interest in the TOD account. Ms. Flanders Borden herself was, again, in the best position to do so as the personal representative of the estate and has not done so. And so because of that, and relatedly, adjudication in the estate's absence didn't impair the estate's ability to protect its interest because that interest was fully protected by and aligned with Ms. Flanders Borden herself. She's also the sole beneficiary of the estate. And furthermore, none of the existing parties are at risk of being subject to multiple or inconsistent obligations without the estate. And I'd point there to the difference between inconsistent obligations and inconsistent results or adjudications. And while Ms. Flanders Borden may have some argument that there's a possibility of inconsistent results, though I think that's questionable, there's no risk of inconsistent obligations here. And so in the absence of satisfying the Rule 19A standard, which, again, was not before the district court, the district court did not abuse its discretion in adjudicating the interpleader without the presence of the estate. Thank you. I will touch briefly, if the court would like to hear it, on the issue of application of Massachusetts v. New York law. No, thank you. Then thank you for your time, Your Honor. Nothing further. Unless the court has questions for me. No. Thank you. Thank you, Attorney Heston. You can mute your audio and video at this time, Mr. Adams. You have a two-minute rebuttal. Please unmute your audio and video and reintroduce yourself on the record. This is Scott Adams for the appellant. If I can address the issue of the medical records, I think the interesting part is that it is only Mr. Sherry's testimony and Mr. Sherry's reference to the medical records that introduces anyone to the actual state of the decedent's mental condition. No other witness, including his attorney, reveals any knowledge or any disclosure of his mental disability at any time. And that certainly comes into the issue of credibility. And the medical records, even if not introduced for the truth of the matter, as hearsay, would certainly be available for impeaching the testimony and the opinions of every other witness regarding their opinion that he was of sound mind. And I think the medical records would be available, and they certainly illustrate a point that the summary judgment is premature at this point. There is a record that could show the jury another state of facts and reach a different conclusion. I do think that the court does need to review the issue of the choice of law decision. We do disagree on that point. And there are some implications of that as to even what witnesses would be available on the ultimate issue. And there's just one correction if I can make. In my brief, the reply brief at page 10, I did file this with the court. I refer incorrectly to a citation in the appendix as RA. It should be appendix page 40, and that has been sent to the court. Yes, thank you. We received that. Anything else, Mr. Adams? That just relates to the fact that Merrill Lynch had two preconditions to transferring the funds. And that issue was addressed at that point. I'll just leave it at that. Thank you. Okay. Thank you very much, counsel. That finishes the sitting. That concludes the arguments for today. The first session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.